# In the United States Court of Federal Claims

No. 15-364C
(Filed September 6, 2016)
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
                                 *
INSPACE 21 LLC,                  *
                                 *
                                 *
                                 *
           Plaintiff,            *
                                 *
     v.                          *
                                 *
THE UNITED STATES,               *
                                 *
           Defendant,            *
                                 *
     and                         *
                                 *
RANGE GENERATION NEXT            *
LLC,                             *
                                 *
                                 *
                                 *
           Defendant-intervenor. *
                                 *
                                 *
* * * * * * * * * * * * * * * * *
```

## ORDER

The Court has reviewed intervenor's request that certain information be redacted from the opinion filed under seal August 4, 2016. The documents filed by the parties in this case are subject to a protective order precluding disclosure of "information that must be protected to safeguard the competitive process, including source selection information, proprietary information, and confidential information." Protective Order ¶ 1. Although there is "a presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008), which may extend to "materials on which a court relies in determining the litigants' substantive rights," *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986), the Supreme Court has recognized that this right "is not

absolute," and may not allow access to "business information that might harm a litigant's competitive standing," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (citations omitted); *see also In re Reporters Comm. for Freedom of the Press*, 775 F.2d 1325, 1332–33 (D.C. Cir. 1985) (citing *Nixon*, 435 U.S. at 597–98).  Hence, protective orders are routinely used in bid protest cases, for which the record commonly includes confidential proposals containing proprietary information such as non-public prices, business methods, and perhaps even the manner in which information is presented.

This does not mean, however, that all information conveyed in a proposal must be redacted from a judicial opinion.  A description may be so general, or a method so common, that it would be unreasonable to remove it from an opinion, particularly if this might render the ruling unintelligible.  The common law presumption of public access rests, after all, on the notion "that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9–10 (1st Cir. 1998) (citation and internal quotation marks omitted); *see also Baystate Techs.*, 283 F. App'x at 810 (same); *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 131 (2010) (same).  Moreover, the posture of the procurement at issue must be considered, as matters that may have been confidential within a proposal, such as staffing levels, may become public through performance of a contract the award of which was unsuccessfully protested.

In this case, the Court finds that the vast majority of the redactions requested by intervenor are unwarranted.  Intervenor contends that the information it seeks to protect concerns its "technical and pricing approaches" and cites the ban on agency disclosure of proposals, 10 U.S.C. § 2305(g), in support of its requests.  Notice Re Proposed Redactions at 2.  But none of the requested redactions concern pricing, and few pertain to the non-public particulars of intervenor's technical approach.

Intervenor wants removed from the opinion all references to cross-utilization of employees and the use of part-time labor.  One problem with this request is that intervenor had previously contended that its use of part-time and cross-utilized labor has been revealed through its performance of the contract during the transition and the start of the first contract period.  Def.-Int.'s Cross-Motion for J. at 12; *id.*, Ex. A ¶¶ 10–11.   This was given as a ground for dismissal under the doctrine of laches, as plaintiff delayed filing its bid protest until after the transition period was completed --- allegedly placing intervenor at a competitive disadvantage because its "competitive, proprietary processes and approaches . . . have been revealed." Def.-Int.'s Cross-Motion for J. at 12.  Moreover, the Court does not see how general references to the cross-utilization of employees can reveal any proprietary information, given that all four offerors proposed some form of this approach.  Nor is the Court persuaded that the mere concept of using part-time

employees is proprietary.  This is a common practice that is frequently discussed in even heavily-redacted bid protest opinions, *see FirstLine Transp. Sec., Inc. v. United States*, 119 Fed. Cl. 116, 123–24 (2014); *Survival Sys. USA, Inc. v. United States*, 102 Fed. Cl. 255, 265 (2011); *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 256 (2011); *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 420 (1999).

While the mere use of the terms "part-time" and "cross-utilized" employees does not reveal proprietary information in this circumstance, the Court recognizes that some specific details about how intervenor employs such personnel might be protectable.  Two instances of such detail, which might not necessarily be revealed through performance of the contract, have been identified and redacted.  This treatment does not, however, extend to references to the assistance rendered in the performance of unspecified critical tasks.

References to the percentage size of the reduction in labor hours proposed by intervenor will remain in the opinion, because the contract award was upheld, the contract has been performed for an extended period, and the total labor hours performed under the predecessor contracts was revealed to offerors (and would presumably be revealed in any follow-on procurements).  The percentages of the work force that are part-time, and estimates of labor hours saved due to intervenor's implemented efficiencies, remain in the opinion.  The Court does not see how these can represent particular approaches or solutions, as opposed to the expected result of them.  The mimicking of such results would be meaningless unless accompanied by the specific means of accomplishing them, and their removal from the opinion would make it difficult to understand.

Intervenor also puzzlingly requests redaction of a reference to its having proposed to perform several unidentified tasks using one employee for each, and to the fact that more than 1000 staff were needed to perform the contract --- information which cannot possibly disadvantage intervenor.  Its request to redact the number of task areas for which intervenor proposed fewer staff than did plaintiff is without warrant, as this is a mere artifact of the procurement process and not information actually contained in a proposal.  On the other hand, the Court agrees that the number of employees intervenor identified as "critical" may be protected, as well as the number that were not (since the latter could be used to calculate the former).  An offeror's appreciation of the volume of tasks that should be considered critical could itself be crucial in the evaluation of future proposals to perform the contracted work.  The opinion will be reissued, reflecting the above-discussed redactions.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge
